UNITED FOOD AND COMMERCIAL WORKERS, LOCAL UNION 1099, et al., Plaintiffs,

v.

CITY OF SIDNEY, et al., Defendants.

No. C–3–00–296.

United States District Court, S.D. Ohio, Western Division.

March 11, 2002.

Timothy Burke, Steven Ingram, Cincinnati, OH, for plaintiffs.

Edward Dowd, Dayton, OH, Nicholas Subashi, Dayton, OH, Michael Boller, for defendants.

## DECISION AND ENTRY SUSTAINING MOTION TO DISMISS OF DEFENDANT SHELBY COUNTY SHERIFF (DOC. # 25); DECISION AND ENTRY SUSTAINING MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT CITY OF SIDNEY (DOC. # 26); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, Chief Judge.

In February, 2000, the Sidney City Council agreed to rezone certain parcels of real estate, in order to permit the construction of a Wal–Mart store. The Plaintiffs, Local Union 1099 of the United Food and Commercial Workers ("Local 1099") and twelve of its members, opposed that rezoning. As a consequence, the Plaintiffs decided to solicit signatures for a referendum petition during the March 7, 2000, primary election. In order to collect those signatures, various Plaintiffs went to six

polling places on that date, Parkwood, Emerson, Whittier and Lowell Elementary Schools, the Sidney–Shelby County YMCA and Trinity Church of the Brethren. Although the individual Plaintiffs solicited signatures more than 100 feet from the polling places, Deputies of the Shelby County Sheriff, at Parkwood Elementary and the Sidney–Shelby County YMCA, told them that they could not solicit signatures at those locations and threatened them with arrest if they did not leave those sites. Officers of the Sidney Police Department conveyed the same message at Emerson and Lowell Elementary Schools and Trinity Church of the Brethren. Plaintiffs also contend that school officials threatened some of them with arrest, if they did not leave Whittier Elementary School.

In addition to focusing upon the events that occurred on election day, March 7, 2000, the Plaintiffs' Complaint contains allegations about the reaction of the City of Sidney ("Sidney") to their effort to secure enough signatures to require a referendum on the decision to rezone the property for Wal–Mart. According to Plaintiffs, Sidney conspired with Wal–Mart and its employees to deny them their right to referendum, by circulating counter petitions. That alleged conspiracy was also furthered when Sidney repealed the ordinance by which the property had been rezoned, only to reenact a similar ordinance as an emergency, which denied citizens the right to challenge that measure by referendum.

The Plaintiffs brought this litigation against Sidney, the Shelby County Sheriff and the Sidney City Schools.[1] In their

---

1. The Plaintiffs also named Wal–Mart and two of its employees as Defendants. However, they have dismissed their claims against those Defendants. See Doc. # 15. Plaintiffs have also dismissed the individual capacity claims they brought against certain employees of the governmental Defendants. See Doc. # 23. In addition to individual capacity claims, they have asserted official capacity claims against those public employees. An official capacity claim against a public employee is nothing more than a claim against the governmental entity which employs him. See Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore,

Complaint (Doc. # 1), the Plaintiffs set forth two claims for relief, to wit: a claim under 42 U.S.C. § 1983, alleging that the Defendants violated their rights under the First Amendment (First Claim for Relief); [2] and a claim under 42 U.S.C. § 1985, alleging that Sidney conspired with Wal–Mart and its employees to deny them their right to referendum and their First Amendment rights (Second Claim for Relief). The Plaintiffs seek declaratory and injunctive relief, as well as the recovery of compensatory damages. [3]

In its Decision of March 5, 2001, the Court sustained the motion to dismiss filed by Defendant Sidney City Schools, a motion which was directed solely at the Plaintiffs' claim under § 1983 and the First Amendment. [4] *See United Food and Commercial Workers, Local Union 1099 v. City of Sidney*, 174 F.Supp.2d 682 (S.D.Ohio 2001). In particular, the Court concluded that refusing to permit Plaintiffs to solicit signatures on school property did not violate their rights under the First Amendment, since schools being used as polling places were not traditional public fora and the Plaintiffs had failed to allege sufficient facts to support the assertion that a school being used as a polling place was a designated public forum. However, the Court afforded Plaintiffs the opportunity to file an amended complaint, subject to the strictures of Rule 11, alleging that Sidney City Schools has, by policy or practice, designated school property as a public forum for the purpose of campaigning and other expressive activities, on days when the school is being used as a polling site. The Plaintiffs have not filed such an amended pleading.

This case is now before the Court on Shelby County Sheriff's Motion to Dismiss (Doc. # 25) and Sidney's Motion for Judgment on the Pleadings (Doc. # 26). As a means of analysis, the Court will initially set forth the standards which must be applied whenever a defendant moves to dismiss a plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, or for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Following that, the Court will turn to the parties' arguments in support of and in opposition to the instant such motions.

In *In re DeLorean Motor Co.*, 991 F.2d 1236 (6th Cir.1993), the Sixth Circuit restated the standards which govern motions to dismiss for failure to state a claim upon which relief can be granted, under Rule 12(b)(6):

> We review dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on a *de novo* basis. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). This Court must construe the complaint in the light most favorable to the plaintiff,

the Court will not discuss the Plaintiffs' official capacity claims against those employees separately from their claims against the governmental employers.

2. In their First Claim for Relief, the Plaintiffs also cite the Fourteenth Amendment as the vehicle by which the First Amendment is enforced against the states and their political subdivisions. *See* Doc. # 1 at ¶ 115. Since the Plaintiffs have not alleged that the Defendants violated a substantive provision of the Fourteenth Amendment, it is not necessary to discuss that constitutional provision further.

3. Parenthetically, the Plaintiffs have not alleged that they have standing to seek injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects") (internal quotation marks and citation omitted). The Court need not reach this issue in this Opinion.

4. The Plaintiffs had not plead their § 1985 claim against the Sidney City Schools.

accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *Id.* While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Id.* (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting *In re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981)). *Id.* at 1239–40. *See also, Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mertik v. Blalock,* 983 F.2d 1353, 1356 (6th Cir.1993). Moreover, although a District Court is required to accept the truth of the plaintiff's factual allegations, it is not required to accept as true either legal conclusions or unwarranted factual inferences. *Gregory v. Shelby County, Tennessee,* 220 F.3d 433,

446 (6th Cir.2000). "The standard of review applicable to a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is the same de novo standard applicable to a motion to dismiss under Rule 12(b)(6)." *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 511–12 (6th Cir.2001). "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 512. *See also, Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir.1993).

The motions of both the Shelby County Sheriff and Sidney address Plaintiffs' claim under § 1983 and the First Amendment, while only Sidney addresses the Plaintiffs' § 1985 claim in its motion.[5] As a means of analysis, the Court will initially discuss the parties' arguments concerning the Plaintiffs' claim under § 1983 and the First Amendment, following which it will turn to Plaintiffs' claim under § 1985.

## I. Section 1983 and the First Amendment

The Plaintiffs claim under § 1983 and the First Amendment is based upon the theory that their First Amendment rights were violated when they were not permitted to solicit signatures on the property of the six voting places.[6] The Plaintiffs allege that they were acting in a peaceful and non-disruptive manner and neither interfered with operations at the school or other location, nor hindered public access to the polling places. The Plaintiffs also contend that they were standing more than 100 feet from the polls.[7] In its Deci-

---

**5.** The Plaintiffs did not plead their § 1985 claim against the Shelby County Sheriff.

**6.** There is no allegation that the Plaintiffs were denied the ability to solicit signatures

from adjacent, public property such as the sidewalks in front of the polling places.

**7.** State law prohibits loitering, campaigning and soliciting petition signatures within 100

sion of March 5, 2001, this Court concluded that the Shelby City Schools had not violated the Plaintiffs' First Amendment rights, by denying them the right to use school property to solicit signatures, because a school being used as a polling place is not a traditional forum and the Plaintiffs had failed to set forth facts in their Complaint which would support the theory that such a school was a designated public forum.

The Shelby County Sheriff and Sidney argue that the Plaintiffs' § 1983 claim must be dismissed, for the same reasons that the Court dismissed that claim against the Sidney City Schools. Certainly, the aspect of the Plaintiffs' First Claim for Relief which is predicated upon activities which occurred at the four elementary schools must be dismissed, since the Court has previously sustained the motion of the Sidney City Schools, requesting dismissal of that aspect of Plaintiffs' § 1983 claim. However, the Plaintiffs also contend that the Shelby County Sheriff and Sidney violated their First Amendment rights, by not allowing them to solicit signatures on the private property belonging to the YMCA and Trinity Church of the Brethren. That allegation was not implicated by the Plaintiffs' § 1983 claim against the Sidney Public Schools, since no employee of that governmental unit is alleged to have prevented any of the Plaintiffs from soliciting signatures on either property. Accordingly, since the Court did not resolve that issue in its prior Decision, it turns to the question of whether private property can constitute a traditional or designated public forum, even though the Court has concluded that a public building serving as a polling place is not such a forum.

In *Venetian Casino Resort, L.L.C. v. Joint Executive Bd. of Las Vegas*, 257 F.3d 937 (9th Cir.2001), *cert denied,* — U.S. ——, 122 S.Ct. 1204, 152 L.Ed.2d 142 (2002), the Ninth Circuit concluded that the sidewalk in front of a Las Vegas casino was a traditional public forum, even though it was private property, being owned by the casino rather than by Las Vegas. The privately owned sidewalk had replaced the public sidewalk in front of the casino. The public sidewalk had been used in a street widening project requested by the casino. Although the casino retained ownership to the sidewalk, it had granted a perpetual servitude for its unobstructed public use. The Ninth Circuit reviewed the pertinent authority and concluded that the traditional use of the property was an essential factor courts had considered in determining whether private property constituted a public forum.

In *Freedom from Religion Foundation, Inc. v. City of Marshfield*, 203 F.3d 487 (7th Cir.2000), the Seventh Circuit was called upon to determine whether a privately-owned section of an otherwise public park, containing a large statute of Jesus, was a public forum for Establishment Clause purposes. The Seventh Circuit concluded that the sale of the .15–acre section of city park to a private organization did not affect the property's status as a public forum. Factors the court deemed important were the historically public use of the park, including the now privately-owned section, the location of the private section of the park in relation to the rest of the park, and the dedication of the private section to public use. *See* 203 F.3d at 494–95. Other courts faced with the question of whether private property qualifies as a public forum have looked to similar factors. *See, e.g., Thomason v. Jernigan*, 770 F.Supp. 1195, 1201–02 (E.D.Mich. 1991) (finding privately owned cul-de-sac fronting abortion clinic to be a public

feet of a polling place. *See* Ohio Rev.Code § 3501.35.

forum, despite fact that city council had voted to vacate the public right-of-way the city held over the private property, because the area had traditionally been held open to the public for expressive activity and nothing distinguished the property from the other public sidewalks in the city); *Jackson v. City of Markham,* 773 F.Supp. 105, 109 (N.D.Ill.1991) (finding sidewalk and shoulder of highway, although private, to be public fora because they were located within the public highway right-of-way and were traditionally used for public speech and assembly); *Citizens to End Animal Suffering and Exploitation, Inc. v. Faneuil Hall Marketplace,* 745 F.Supp. 65, 76 (D.Mass.1990) (finding Faneuil Hall Marketplace, although leased and operated by a private organization, to be a public forum, in part because the marketplace was an area traditionally used for public assembly, was dedicated to public use, and was indistinguishable from the surrounding public streets and sidewalks).

*Id.* at 943–44. *See also, International Soc. for Krishna Consciousness v. Lee,* 505 U.S. 672, 680, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (refusing to consider bus terminals and train terminals as traditional public fora because of their history of private ownership).

Herein, the Plaintiffs have not alleged that either the YMCA or Trinity Church of the Brethren has traditionally been used as a public forum, either on election days when they are used as polling places or otherwise. Rather, the Plaintiffs contend that the state made the YMCA and Trinity Church of the Brethren a traditional or designated public fora, by permitting those properties to be used as polling places during the March 7, 2000, primary. In support of that assertion, the Plaintiffs rely upon Ohio Revised Code § 3501.29, which requires boards of elections to provide a polling place for each precinct. Although the preference is to utilize public schools and other public buildings as polling places, that statute permits a board of elections to rent space in a private building. In its Decision of March 5, 2001, this Court concluded that § 3501.29 did not render public schools traditional or designated public fora on election day; rather, that statutory provision evidenced "an intent to open a portion of public school property to registered voters for the limited purpose of voting, not for other expressive activities which may accompany elections." 174 F.Supp.2d at 694. Consequently, the Court concluded that § 3501.29 did not "provide Plaintiffs a constitutional right to solicit signatures on school grounds, while that building is being used as a polling place." *Id.* There is simply no reason to conclude that, by enacting § 3501.29, the Ohio General Assembly intended to make private buildings being used as polling places traditional or designated public fora in which people would have a First Amendment right to solicit signatures and to campaign, while it did not render public schools, the statutorily preferred polling places, such fora.

■ In sum, the Court concludes that the schools and private property upon which the Plaintiffs attempted to solicit signatures did not constitute traditional or designated public fora. Consequently, the Plaintiffs were not denied their First Amendment rights by not being permitted to solicit signatures on that property. Accordingly, the Court sustains the Shelby County Sheriff's Motion to Dismiss (Doc. # 25) and Sidney's Motion for Judgment on the Pleadings (Doc. # 26), as those motions relate to Plaintiffs' claim under § 1983 and the First Amendment, the First Claim for Relief in their Complaint (Doc. # 1).

## II. Section 1985

The Sixth Circuit recently reiterated the elements of a claim under § 1985:

1) a conspiracy; 2) for purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Riddle v. Egensperger,* 266 F.3d 542, 549 (6th Cir.2001). Sidney argues that it is entitled to judgment on the pleadings on the Plaintiffs' claim under § 1985, because they have failed to allege either the second or fourth elements of a viable § 1985 claim. As a means of analysis, the Court will initially discuss the parties' arguments concerning the second element, following which it will turn to the fourth such.

■ With respect to the second element the Supreme Court held, in *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), that a § 1985 plaintiff must establish the existence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See also, Collyer v. Darling,* 98 F.3d 211, 233 (6th Cir.1996), *cert. denied,* 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997); *Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, 839 (6th Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1698, 131 L.Ed.2d 560 (1995). The Supreme Court has explicitly left open whether § 1985 reaches conduct other than that motivated by racial animus. *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 835, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Applying the foregoing principles, the Sixth Circuit has held that to state a claim for relief under § 1985, a plaintiff must allege that the conspirators were motivated by a class-based discriminatory animus. *See Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992) ("To state a claim under § 1985(3), a complaint must allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action.") (internal quotation marks and citation omitted). Herein, Sidney argues that the Plaintiffs have failed to allege that the conspiracy was motivated by a racial or otherwise class-based animus. In response, the Plaintiffs argue that Sydney was motivated by a politically based animus and that such a motivation is recognized as viable by Sixth Circuit precedent. Although the Plaintiffs have not set forth such a theory in their Complaint, they could possibly do so if given leave to amend. Accordingly, the Court will assume, arguendo, for present purposes that the Plaintiffs could file an amended pleading which would adequately set forth the second element of a claim under § 1985, and will turn to Sidney's argument that the Plaintiffs have not plead the fourth element of a § 1985 claim in their Complaint.

■ The fourth element of a claim under § 1985 requires that the plaintiff show that his federally secured rights were abrogated in some respect. *Griffin,* 403 U.S. at 102–03, 91 S.Ct. 1790. In their Complaint, the Plaintiffs allege that Sidney conspired to deprive them of their right to referendum. However, there is no federally guaranteed right to referendum. *See e.g., Save Palisade Fruitlands v. Todd,* 279 F.3d 1204 (10th Cir.2002); *Stone v. City of Prescott,* 173 F.3d 1172 (9th Cir.), *cert. denied,* 528 U.S. 870, 120 S.Ct. 170, 145 L.Ed.2d 144 (1999); *Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291 (6th Cir.1993). Consequently, the Plaintiffs cannot have a claim under § 1985 that Sidney conspired to deny them such right. The Plaintiffs have also alleged that Sid-

ney conspired to deprive them of their First Amendment rights. Since the Court has concluded above that the Plaintiffs have failed to set forth facts sufficient to support a claim that they were deprived of their First Amendment rights, by not permitting them to solicit signatures at the Emerson and Lowell Elementary Schools and Trinity Church of the Brethren, it follows that they have failed to plead that Sidney conspired to deprive them of those rights. *See Local No. 48 v. United Brotherhood of Carpenters and Joiners of America,* 920 F.2d 1047, 1058 (1st Cir. 1990) ("Having failed to show that their federally secured rights were abrogated in any respect, it follows *a fortiori* that appellants possess no colorable claim under section 1985.").

In sum, the Court concludes that the Plaintiffs did not suffer a deprivation of their First Amendment rights by being refused permission to solicit signatures on the property of the four schools, the YMCA and the church. Consequently, their claim under § 1983 must be dismissed. In addition, the Court concludes that the Plaintiffs did not allege sufficient facts to state a claim that Sidney conspired to deprive them of a federally guaranteed right, a finding which necessitates the dismissal of their claim under § 1985. Accordingly, the Court sustains Shelby County Sheriff's Motion to Dismiss (Doc. # 25) and Sidney's Motion for Judgment on the Pleadings (Doc. # 26). Since the rulings herein dispose of the remaining claims in this litigation, the Court directs that judgment is to be entered in favor of Defendants and against Plaintiffs, dismissing the Plaintiffs' claims with prejudice.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the South-

ern District of Ohio, Western Division, at Dayton.