TACHA, Chief Judge.
Summum, a religious organization, filed suit under 42 U.S.C. § 1983 against Du-chesne City, its mayor, and its city council members (collectively “City”) for alleged violations of Summum’s First Amendment free speech rights. Summum appeals the District Court’s entry of summary judgment in favor of the City with respect to Summum’s request for prospective injunc-tive relief from alleged ongoing violations of its free speech rights. The City cross-appeals the District Court’s entry of summary judgment in favor of Summum with respect to Summum’s request for declaratory relief and nominal damages for the City’s past violations of its free speech rights. In addition, the City cross-appeals the District Court’s denial of its motion for summary judgment based on lack of standing, and both parties appeal the District Court’s order awarding Summum attorneys’ fees. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part, reverse in part, and remand.
I. BACKGROUND
This dispute arises from Summum’s request to erect a monument of the Seven Aphorisms of Summum in a city park in Duchesne City, Utah. In September 2003, Summum sent a letter to the mayor of Duchesne City asking the City to transfer a small (10' x 11') plot of land in Roy Park to Summum for the display of its monument. Summum requested a plot of land (rather than simply seeking permission to erect its monument on public property) because, in August, the mayor had transferred a 10' x 11' plot of land in Roy Park containing a Ten Commandments monument to the Duchesne Lions Club. At the time of the transfer, the Ten Commandments monument had been displayed in Roy Park for nearly twenty-five years. In an attempt to remove the monument from public property, the mayor transferred the land to the Lions Club by quitclaim deed. The contract for the transaction cites the club’s work in cleaning and beautifying the city as consideration for the transfer. Summum, in its request for a similar land transfer, asked that the City grant it the same access to public property that the City had granted the Lions Club. The City responded by letter, notifying Summum that it would grant Summum a *1267 similarly sized plot of land in Roy Park if the organization contributed the same amount of service to the City as the Lions Club had contributed.
Construing the City’s response as a denial of its request for a plot of land in Roy Park, Summum filed suit under 42 U.S.C. § 1983 in federal district court, alleging violations of its free speech rights under the First Amendment. It also alleged the City violated its rights under the Utah Constitution’s Free Expression and Establishment Clauses. It sought declaratory and injunctive relief, as well as monetary damages. Both parties moved for summary judgment. At a hearing on the motions, the District Court expressed reservations about the City’s land transfer to the Lions Club. In particular, it questioned whether the sale was supported by adequate consideration and was an arm’s-length transaction (the mayor of the City was also president of the Lions Club). The court also noted that the City had not erected any fences, signs, or other indications of its disassociation from the plot of land and monument. After the court encouraged the parties to seek other solutions to the problem, the Lions Club transferred the plot of land back to the City by quitclaim deed, and the City sold the plot to the daughters of Irvin Cole, in whose honor the monument was originally donated. The Cole daughters paid $250 for the property, which they are free to use and dispose of as they wish. In addition, a white-picket fence approximately four feet high currently encircles the property, and a sign states that the City does not own the property. The City notified the District Court of the changed circumstances.
Summum argued that the City’s sale of the property to the Cole daughters did not cure the violation of Summum’s free speech rights. But in response to both parties’ motions for summary judgment, the District Court entered an order in favor of the City, finding that the second sale ended the City’s association with the Ten Commandments monument. The court concluded that because the monument was now private speech on private property, Summum was not entitled to injunctive relief facilitating the display of its monument in the park. In a subsequent order, the District Court concluded that prior to the sale of the plot to the Cole daughters, the City was violating Summum’s free speech rights; it therefore granted Summum’s motion for declaratory relief and awarded it nominal damages of $20. Summum now appeals the District Court’s denial of its request for injunctive relief. The City cross-appeals the District Court’s decision regarding declaratory relief and damages, as well as the court’s denial of the City’s motion for summary judgment based on lack of standing. In addition, both parties appeal the District Court’s order awarding attorneys’ fees to Summum as a prevailing party under 42 U.S.C. § 1988.
II. DISCUSSION

A. Standing

Before we reach the merits of Sum-mum’s First Amendment claim, we first address the City’s contention that Sum-mum lacks standing to bring this claim. Our review of this legal question is de novo. Lippoldt v. Cole, 468 F.3d 1204, 1216 (10th Cir.2006).
To ensure that an Article III case or controversy exists, a party asserting federal jurisdiction must establish three elements to have standing to bring a claim. Doctor John’s, Inc. v. City of Roy, 465 F.3d 1150, 1155 (10th Cir.2006); Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1255 (10th Cir.2004). First, the party must establish an injury-in-fact by showing “an invasion of a legally pro *1268 tected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical.” Utah Animal Rights Coal., 371 F.3d at 1255 (quotations omitted). Second, the party must demonstrate causation by “showing that the injury is fairly traee[able] to the challenged action of the defendant, rather than some third party not before the court.” Id. (alteration in original) (quotations omitted). And third, the party must establish redressability by showing “that it is likely that a favorable court decision will redress the injury to the plaintiff.” Id. (quotations omitted).
Summum claims that its First Amendment rights were violated when the City denied its request to erect a permanent monument in the park while allowing others to do so. The City maintains, however, that it removed the Ten Commandments monument from the park by selling the underlying property and that, consequently, a forum for permanent displays no longer exists in the park. Thus, the City argues, Summum has failed to establish an injury-in-fact. But the efficacy of the City’s closure of the park as a forum for permanent displays is a matter of debate. And as we have cautioned, “we must not confuse standing with the merits.” Id. at 1256; see also Initiative and Referendum Inst. v. Walker, 450 F.3d 1082, 1088 (10th Cir.2006) (en banc) (“For purposes of the standing inquiry, the question is not whether the alleged injury rises to the level of a constitutional violation. That is the issue on the merits.”). If Summum is correct that the Ten Commandments monument is part of a public forum to which it was denied access, it may have suffered a deprivation of its free speech rights, which would clearly be an injury-in-fact caused by the City’s actions and redressable by a favorable court decision. We therefore conclude that Summum has standing to bring its First Amendment claim.

B. First Amendment Claim

We review a district court’s grant of summary judgment de novo, applying the same standard the district court applied. First Unitarian Church of Salt Lake City v. Salt Lake City Corp., 308 F.3d 1114, 1120 (10th Cir.2002); see also Jacklovich v. Simmons, 392 F.3d 420, 425 (10th Cir.2004) (“On cross-motions for summary judgment, our review of the summary judgment record is de novo and we must view the inferences to be drawn from affidavits, attached exhibits and depositions in the light most favorable to the party that did not prevail.... ”). Summary judgment is proper only if the record shows “that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c). In addition, because the case before us involves First Amendment interests, “we have an obligation to conduct an independent review of the record and to examine constitutional facts and conclusions of law de novo.” First Unitarian Church, 308 F.3d at 1120.
1. Principles of Forum Analysis
According to Summum, because the City has permitted a private party to erect a monument in a public forum, but denied Summum’s request to do the same, it has violated Summum’s free speech rights. In other words, Summum claims that the City has denied it access to a public forum on the same terms it has granted to others. Hence, Summum’s claim depends on whether the Ten Commandments monument continues to be part of the forum to which Summum seeks access (i.e., permanent displays in Roy Park), even though the City claims to have transferred the small plot of land containing the monument—first to the Lions Club and then to the Cole daughters.
*1269 Before turning to the question of whether the Ten Commandments monument remains part of the park, we note that the park, in general, is a traditional public forum, and it is this physical setting that defines the character of the forum to which Summum seeks access. Streets and parks are “quintessential public forums,” as they “ ‘have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.’ ” Perry Educ. Ass’n v. Peary Local Educs. Ass’n, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (quoting Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)).[1] The characterization of the forum at issue is crucial because “the extent to which the Government can control access depends on the nature of the relevant forum.” Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). In public forums, content-based exclusions (e.g., excluding Sum-mum’s Seven Aphorisms while allowing the Ten Commandments) are subject to strict scrutiny and will survive “only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.” Id. Alternatively, the government “may impose reasonable, content-neutral time, place, and manner restrictions” on speech in public forums (e.g., excluding all permanent displays). Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 761, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995).[2]
*1270 The difficult question in this case is whether the small plot of land with the Ten Commandments monument remains part of a public forum (i.e., the city park) despite the City’s efforts to sell it to a private party. As a general matter, “[a] government may, by changing the physical nature of its property, alter it to such an extent that it no longer retains its public forum status.” Hawkins v. City and County of Denver, 170 F.3d 1281, 1287 (10th Cir.1999) (finding that the city had sufficiently altered former public street so that it was no longer a traditional public forum). Hence, a city’s sale of public property may cause it to lose its public forum status. See Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1255 (10th Cir.2005) (rejecting the argument that “a public forum may never be sold to a private entity, or that if it is sold, it remains a public forum”); see also Int’l Soc’y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 699, 112 S.Ct. 2711, 120 L.Ed.2d 541 (1992) (Kennedy, J., concurring) (“In some sense the government always retains authority to close a public forum, by selling the property, changing its physical character, or changing its principal use.”). But a sale of property is not conclusive. Indeed, a First Amendment forum analysis may apply even when the government does not own the property at issue: “forum analysis does not require the existence of government property at all.” First Unitarian Church, 308 F.3d at 1122; see also Marsh v. State of Alabama, 326 U.S. 501, 509, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (holding that the First Amendment was violated when a corporate-owned municipality restricted individual’s speech); United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc., 383 F.3d 449, 452-53 (6th Cir.2004) (holding that privately owned sidewalk surrounding privately owned park was a public forum). Thus, even assuming the property with the Ten Commandments monument is privately owned, it may nevertheless continue to be part of the public forum and therefore subject to the strictures of the First Amendment. See First Unitarian Church, 308 F.3d at 1131 (holding that the city’s easement over private property was a public forum).
In determining whether private property retains its status as part of a public forum, the inquiry centers on the objective, physical characteristics of the property. Utah Gospel Mission, 425 F.3d at 1256; First Unitarian Church, 308 F.3d at 1124; see also United Church of Christ, 383 F.3d at 452 (holding that privately owned sidewalk was public forum because it resembled public sidewalk and “blend[ed] into the urban grid”); Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd. of Las Vegas, 257 F.3d 937, 948 (9th Cir.2001) (holding that privately owned sidewalk was a traditional public forum because it was “seamlessly connected to public sidewalks at either end and intended for general public use”). That is, a city’s intentions and efforts to remove the plot of land by transferring it to private owners do not dictate the property’s status. Ark. Educ. Television Comm’n v. Forbes, 523 U.S. 666, 678, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998); see also First Unitarian Church, 308 F.3d at 1124 (“The government cannot simply declare the First Amendment status of property regardless of its nature or its public use.”). In addition to examining the objective, physical characteristics of private property, we have also asked whether the city is “inextricably intertwined with the ongoing operations” of the private owner or property and whether the property continues to serve the same primary function as it did before the transfer. Utah Gospel Mission, 425 F.3d at 1256-58; see also First Unitarian Church, 308 F.3d at 1128 (finding the fact that easement served same *1271 purpose as public sidewalk “a persuasive indication that the easement is a traditional public forum”).
The District Court did not conduct a forum analysis to determine whether the plot of land with the Ten Commandments monument remained part of the public forum (i.e., the park) despite its sale to a private party. Instead, the court analogized the present case to the facts in Freedom from Religion Foundation, Inc. v. City of Marshfield, 203 F.3d 487 (7th Cir.2000), which involved an Establishment Clause challenge to a statue of Christ in a city park. In an effort to distance itself from religious speech, the city sold the plot of land containing the statue to a private entity. The Seventh Circuit held that the city failed to take sufficient measures to end its endorsement of religion: the “physical state of the park” was such that “a reasonable person [could] conclude that the government, rather than a private entity, endorses religion.” Id. at 495 (emphasis added).
But a determination of whether the government is endorsing religion is not the same as a determination of whether speech is occurring in a public forum. The Seventh Circuit recognized this distinction in Marshfield when it acknowledged that, in remedying its Establishment Clause violation, the city should be mindful of the property’s inclusion in a public forum: “because our holding limits private speech in a public forum, any remedy must be narrowly tailored to avoid an Establishment Clause violation.” Id. at 497. In other words, the court recognized that a remedy ending the city’s endorsement of religion would not necessarily remove the statue from the public forum, and as part of a public forum, the statue was protected speech under the Free Speech Clause of the First Amendment. To be sure, measures a city takes to differentiate private property from a public forum might affect both the private property’s status as a public forum, as well as any perceived endorsement of religion, see id., but the inquiry is not identical. A surrounding fence and disclaimer may be sufficient to disassociate the City from private speech for purposes of the Establishment Clause, but these measures do not necessarily remove a small parcel of property from a public forum. The District Court therefore erred in relying on Marshfield tó support- its conclusion that the sign and fence' surrounding the plot of land “removed” the plot from the public- forum.
In addition to its reliance on Marshfield, the District Court’s analysis is flawed in another respect. The first step in determining whether private property is nevertheless part of a public forum should be to resolve conclusively whether the property at issue is in fact privately owned. Because the District Court analyzed the property’s status under the Establishment Clause, rather than the Free Speech Clause, it did not focus on the City’s transfer of the property to the Lions Club and, later, to the Cole daughters. Instead, the District Court assumed that both sales were valid. For Establishment Clause purposes, the property’s status as private or public may not significantly affect the relevant inquiry into whether a reasonable person could conclude that the government is endorsing religion. In the context of free speech, however, whether the property is private or public significantly affects the analysis of the property’s forum status. If the land transfers in this case are invalid, the Ten Commandments monument is located on public property in a city park and is therefore clearly located within a public forum. Alternatively, if the City’s transfers are valid, the reviewing court must determine whether the plot of land with the monument continues to be part of a public forum despite its private ownership (and the City’s efforts to disassociate *1272 itself from the monument). To apply the latter analysis without first determining the validity of the land transfers could run afoul of the fundamental principle that courts should not “formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.” McConnell v. Federal Election Comm’n, 540 U.S. 93, 192, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) (quotations omitted); see also United States v. Cusumano, 83 F.3d 1247, 1250-51 (10th Cir.1996) (noting that the federal courts will not resolve a constitutional question until it is unavoidable).
The District Court should therefore have analyzed the transfers for compliance with state law, rather than assuming that both sales were valid. We therefore conduct an independent review of the. record to determine whether each transfer is valid under state law. We conclude that the transfer to the Lions Club was invalid, but find the record insufficiently developed to determine whether the sale to the Cole daughters is valid and therefore remand to the District Court so that it may conduct an analysis consistent with this opinion.
2. State Law Governing the City’s Transfer of Public Property
Under state law, a city’s legislative body has the power to dispose of public property “for the benefit of the municipality.” Utah Code Ann. § 10 — 8—2(l)(a)(iii). The Utah Supreme Court has interpreted this statutory provision to require that municipalities sell or otherwise dispose of public property “in good faith and for an adequate consideration.” Sears v. Ogden City, 533 P.2d 118, 119 (Utah 1975) (holding that a city may not dispose of its property by gift), affd on rehearing, 537 P.2d 1029. The court has also held that “adequate consideration” requires the receipt of a “present benefit that reflects the fair market value” of the property. Mun. Bldg. Auth. of Iron County v. Lowder, 711 P.2d 273, 282 (Utah 1985); see also Salt Lake County Comm’n v. Salt Lake County Attorney, 985 P.2d 899, 910 (Utah 1999) (holding that adequate consideration requires a specific benefit stated in “present market value terms”). Hence, a “future” benefit will not supply adequate consideration for a city’s transfer of property, “nor will a benefit that is of uncertain value.” Price Dev. Co., L.P. v. Orem City, 995 P.2d 1237, 1247 (Utah 2000). Furthermore, Utah case law suggests that a city’s disposal of park property is subject to additional limitations: “[Pjroperty such as streets, alleys, parks, public buildings, and the like, although the title is in the city ... is held in trust for strictly corporate purposes, and, as a general rule, cannot be sold or disposed of so long as it is being used for the purposes for which it was acquired.” McDonald v. Price, 45 Utah 464, 146 P. 550, 551 (1915).
In addition to these substantive requirements, the Utah Supreme Court has held that a city’s transfer of public property must be supported by documentation demonstrating the fairness of the transfer:
[W]hen a legislative body enters into a transaction where public money or property is given in exchange for something, the good faith legislative judgment that the net exchange is for fair market value flowing to the entity needs to be supported by documentation within the legislative record of an independent determination of the value of the exchange.
Price Dev. Co., 995 P.2d at 1249. Such documentation attaches a presumption of validity to the transaction, the strength of which is “in direct proportion to the thoroughness of the evaluation of the transaction entered into and to the independence and skill of the evaluators.” Id.
*1273 a. Transfer of the Plot to the Lions Club
The transfer from Duchesne City to the Lions Club by quitclaim deed in August 2003 was clearly invalid under state law. As an initial matter, no presumption of validity attaches to the transaction because no documentation exists demonstrating the transaction’s fairness. The City contends, however, that the properly executed and recorded quitclaim deed creates a presumption of validity. The City is correct that, under Utah law, recorded documents governing title to real property do create certain presumptions, Utah Code Ann. §§ 57-1-13; 57-4a-4, including the presumption that “any necessary consideration was given,” id. § 57-4a-4(l)(e). But this more general statute must be interpreted in conjunction with the specific statutes and case law governing transfers of real property by municipalities. And, as noted above, a municipality’s transfer of public property enjoys a presumption of validity only when supported by underlying documentation of the “independent determination of the value of the exchange.” Price Dev. Co., 995 P.2d at 1249.
Moreover, the presumption of a valid transaction may be rebutted by clear and convincing evidence of the transfer’s invalidity. Gold Oil Land Dev. Corp. v. Davis, 611 P.2d 711, 712 (Utah 1980). In this case, the record contains clear and convincing evidence that the City’s transfer to the Lions Club was invalid. The deed purported to transfer the parcel of property from the City to the Lions Club in return for $10 and “other considerations.” The contract for sale of the property states that the transfer is “in exchange for consideration of work for the cleaning and beautification of Duchesne City.” Neither document supports a conclusion that the consideration is a specific, present benefit reflecting fair market value. In addition, the same person represented entities on both sides of the transaction; Clinton Park signed the contract on behalf of the City, in his capacity as mayor, and on behalf of the Lions Club, in his capacity as president of the local chapter. This fact raises considerable doubt that the transfer was made in “good faith.” See, e.g., Utah Code Ann. § 70A-1-201(19) (“ ‘Good faith’ means honesty in fact in the conduct or transaction concerned.”). Because the sale to the Lions Club was not made “in good faith and for an adequate consideration,” Sears, 533 P.2d at 119, it is invalid under state law.
Because the sale to the Lions Club was invalid, the plot of land with the Ten Commandments monument remained part of a public forum. The next question is whether the City’s reasons for prohibiting Summum’s speech satisfy the appropriate First Amendment standard. The City concedes it excluded Summum’s speech based on its subject matter and the speaker’s identity. In addition to exclusions based on viewpoint or subject matter, exclusions based on the speaker’s identity trigger strict scrutiny when the forum at issue is public. See Cornelius, 473 U.S. at 808, 105 S.Ct. 3439 (noting that exclusion of speech from a public forum requires “a finding of strict incompatibility between the nature of the speech or the identity of the speaker” and the forum’s function); see also Police Dep’t of Chicago v. Mosley, 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (“[W]e have frequently condemned ... discrimination among different users of the same medium for expression.”). To survive strict scrutiny, the City must demonstrate that “the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.” Cornelius, 473 U.S. at 800, 105 S.Ct. 3439.
*1274 The City does not assert any compelling interest for this restriction.[3] Rather, the City asserts that no constitutional right exists to erect a permanent structure on public property. We do not need to address that proposition in its most general application, however, because in any event it does not apply when the government allows some groups to erect permanent displays, but denies other groups the same privilege. Indeed, the cases cited by the City acknowledge this distinction. See, e.g., Lubavitch Chabad House, Inc. v. City of Chicago, 917 F.2d 341, 347 (7th Cir.1990) (“First Amendment jurisprudence certainly does mandate that if the government opens a public forum to allow some groups to erect communicative structures, it cannot deny equal access to others because of religious considerations .... ”); see also Summum v. Pleasant Grove City, 483 F.3d 1044, 2007 WL 1128876 (10th Cir.2007) (holding that a content-based exclusion of a permanent display in a public park violated the First Amendment). Indeed, we have held that similar restrictions on speech may violate the First Amendment even under the less exacting standard of review applied to speech restrictions in nonpublic forums.[4] Summum v. City of Ogden, 297 F.3d 995, 1011 (10th Cir.2002); Summum v. Callaghan, 130 F.3d 906, 921 (10th Cir.1997). Viewing the relevant, undisputed facts in the light most favorable to the City, we therefore conclude that Summum’s free speech rights were violated prior to the property’s transfer to the Cole daughters and affirm the District Court’s grant of summary judgment in favor of Summum on this issue.[5]
*1275 b. Transfer of the Plot to the Cole Daughters
Summum’s request for prospective injunctive relief depends, in part, on the validity of the City’s transfer of the property to the Cole daughters. After Clinton Park, in his capacity as president of the Lions Club, transferred the property back to the City, the city council passed ordinances governing the disposition of real property owned by the City and vacating the 10' x 11' parcel of property with the Ten Commandments monument. The council also passed a resolution authorizing the mayor to transfer the property to the Cole daughters. In July 2004, Clinton Park, as mayor, signed a quitclaim deed transferring the property to the Cole daughters for $250 “and other considerations.”
The value of the exchange is apparently based on a Duchesne County tax appraisal, which lists the Duchesne Lions Club as the owner. This alone is not enough to determine whether the sale was in good faith and for adequate consideration under state law. The record lacks any supporting documentation “of an independent determination of the value of the exchange,” Price Dev. Co., 995 P.2d at 1249, or “a detailed showing of the benefits to be obtained” from the transfer, Salt Lake County Comm’n, 985 P.2d at 910. The county tax appraisal does not contain this detailed showing, as it is not intended to evaluate the City’s transfer of the property to a private owner. Moreover, the record contains no discussion of whether the City could dispose of park property when the property’s purpose had not changed. See McDonald, 146 P. at 551 (noting general rule that property “held in trust for strictly corporate purposes” may not “be sold or disposed of so long as it is being used for the purposes for which it was acquired”).
The District Court simply assumed the sale was valid based on the City’s assertions and did not conduct an analysis of the transfer under state law. But based on our review of the record, a genuine issue of material fact exists concerning the validity of the City’s transfer. We therefore reverse the District Court’s grant of summary judgment in favor of the City on Summum’s claim for injunctive relief. Because a determination of the sale’s validity is important to a determination of the property’s forum status, the District Court must first decide whether the sale meets the requirements of state law. Once this issue is decided, the court may then decide the constitutional issue of the property’s forum status, applying an analysis consistent with this opinion. In addition, even if the District Court determines on remand that the land upon which the Ten Commandments monument rests is no longer part of the traditional public forum of Roy Park, Summum may still be entitled to prospective injunctive relief entitling it to place its monument on other locations that remain in the traditional public forum of Roy Park, unless the court determines that the City’s ordinance purporting to close all of Roy Park to permanent displays is a valid time, place, or manner restriction under the analysis articulated in Ward v. Rock Against Racism, 491 U.S. 781, 798-800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

C. State Law Claims

Summum also claims that the District Court erred in dismissing its state law claims. In resolving the parties’ motions for summary judgment the District Court did not explicitly address Sum-mum’s state law claims. Accordingly, we assume that it declined to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c). See Erikson v. Pawnee County Bd. of County Comm’rs, 263 F.3d 1151, 1155 n. 6 (10th Cir.2001) (assuming district court declined supple *1276 mental jurisdiction when it did not address state law claims in its order of dismissal). We review a district court’s decision regarding supplemental jurisdiction for abuse of discretion. Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1213 (10th Cir.2006). In general, when federal claims are disposed of prior to trial, the district court may decline to exercise supplemental jurisdiction over state law claims and allow the plaintiff to assert those claims in state court.[6] Ball v. Renner, 54 F.3d 664, 669 (10th Cir.1995); see also 28 U.S.C. § 1367(c)(3) (“[A] district court[] may decline to exercise supplemental jurisdiction” over state law claims if it “has dismissed all claims over which it has original jurisdiction.”). But because we remand Summum’s federal claim for prospective injunctive relief, the District Court should reconsider whether to exercise supplemental jurisdiction over Summum’s state law claims. See Baca v. Sklar, 398 F.3d 1210, 1222 n. 4 (10th Cir.2005) (directing the district court to reconsider its decision to decline supplemental jurisdiction after remanding a federal claim).

D. Attorneys’Fees

Both parties appeal the District Court’s order awarding Summum one percent ($694.40) of the amount requested in attorneys’ fees. Summum argues that it is entitled to a larger fee award, while the City argues that the court should not have awarded Summum any attorneys’ fees. Because we reverse the District Court’s grant of summary judgment in favor of the City with respect to injunctive relief, we vacate its order awarding attorneys’ fees. The District Court may recalculate attorneys’ fees after it determines whether Summum is entitled to injunctive relief in light of the foregoing discussion.
We caution, however, that to reach the conclusion that a plaintiffs victory is merely technical or de minimis — justifying only a low fee award or no award at all — -the court must first apply the factors from Justice O’Connor’s concurrence in Farrar v. Hobby, 506 U.S. 103, 116-22, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).[7] In this case, the District Court characterized the City’s violation of Summum’s rights as “technical” before it applied the O’Connor factors because it had only awarded Summum nominal damages. But “[njominal relief does not necessarily a nominal victory make.” Farrar, 506 U.S. at 121, 113 S.Ct. 566. Accordingly, on remand, the court should apply the three O’Connor factors before deciding that the victory is technical and that the only reasonable fee is therefore a low fee or no fee at all. Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1230 n. 3 (10th Cir.2001); see also Lippoldt, 468 F.3d at 1223-24 (holding that the district court abused its discretion in finding that plaintiffs achieved only technical success without considering all the Farrar factors).
*1277 III. CONCLUSION
We AFFIRM the District Court’s grant of summary judgment in favor of Summum with respect to declaratory relief and nominal damages, but we REVERSE its grant of summary judgment in favor of Du-chesne City with respect to Summum’s request for injunctive relief. In addition, we VACATE the District Court’s order awarding Summum attorneys’ fees and REMAND for further proceedings consistent with this opinion.

. The City argues that the relevant forum is nonpublic in nature according to our decisions in Summum v. City of Ogden, 297 F.3d 995 (10th Cir.2002), and Summum v. Callaghan, 130 F.3d 906 (10th Cir.1997). But in both City of Ogden and Callaghan, the property at issue could not be characterized — by tradition or government designation — as a public forum. City of Ogden, 297 F.3d at 1002 (holding that permanent monuments on the grounds of a municipal building were a nonpublic forum); Callaghan, 130 F.3d at 916-17 (holding that monuments on a courthouse lawn were a nonpublic forum). Conversely, in the present case, the property is a park, the kind of property which has "immemorially been held in trust for the use of the public.” Hague, 307 U.S. at 515, 59 S.Ct. 954. The fact that Summum seeks access to a particular means of communication (i.e., the display of a monument) is relevant in defining the forum, but it does not determine the nature of that forum. See Cornelius v. NAACP Legal Def. and Educ. Fund, Inc., 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) ("Having identified the forum ... we must decide whether it is nonpublic or public in nature.”); see also Summum v. Pleasant Grove City, 483 F.3d 1044, 2007 WL 1128876 (10th Cir.2007) (holding that “permanent monuments in the city park” are a public forum).

. We note that the Supreme Court has chosen not to apply forum principles in certain contexts, recognizing that the government in particular roles has discretion to make content-based judgments in selecting what private speech to make available to the public. See United States v. Am. Library Ass'n, Inc., 539 U.S. 194, 205, 123 S.Ct. 2297, 156 L.Ed.2d 221 (2003) (plurality opinion) (recognizing that public library staffs have broad discretion to consider content in making collection decisions); Ark. Educ. Television Comm’n v. Forbes, 523 U.S. 666, 673, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998) (“Public and private broadcasters alike are not only permitted, but indeed required, to exercise substantial editorial discretion in the selection and presentation of their programming.”); Nat’l Endowment for the Arts v. Finley, 524 U.S. 569, 585, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (holding that the NEA may make content-based judgments in awarding grants as such judgments "are a consequence of the nature of arts funding”). The city in the case before us is not, however, acting in its capacity as librarian, television broadcaster, or arts patron. Because the Supreme Court has not extended the reasoning of these cases to the context we consider today, we conclude that the case is best resolved through the application of established forum principles.

. In its letter denying Summum’s request, the City indicated it would grant Summum the same access as the Lions Club once Summum contributed the same number of service hours to the City. While we doubt the sincerity of the City's stated reason (and therefore its motive) in excluding Summum's speech, the City's denial based on lack of community service confers too much discretion on city officials to exclude speech from a public forum. City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 770-72, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The City provided no specific guidelines for determining when a speaker has engaged in the quantity and quality of community service sufficient to gain access to the park. This kind of "unbridled discretion” is clearly unconstitutional. Id. at 770, 108 S.Ct. 2138 ("The doctrine [forbidding unbridled discretion] requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice.”)

. Moreover, because the Ten Commandments monument remained part of a public forum, we need not address the City’s argument that the display of Summum’s monument (and no other) would have caused the City to violate the Establishment Clause. But we note that, when a forum for private speech exists, we have rejected the Establishment Clause defense. Callaghan, 130 F.3d at 921; see also City of Ogden, 297 F.3d at 1011 (recommending that the city post a disclaimer if it is concerned that reasonable observers would interpret monument as a governmental endorsement of religion).

. The City argues that the District Court should not have granted Summum’s request for declaratory relief because it had already granted the City's motion for summary judgment on Summum’s entire First Amendment claim. But in its order, the court found that the City’s sale to the Cole daughters cured any First Amendment violation and denied Sum-mum’s request for prospective relief in the form of an injunction. The court specifically noted that the order did not settle Summum's claims for money damages and attorneys’ fees. This first judgment did not therefore preclude the court’s subsequent entry of declaratory judgment and damages in favor of Summum for the period prior to the City’s second attempt to transfer the property. Furthermore, although declaratory relief is typically prospective, "we consider declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred,” PeTA v. Rasmussen, 298 F.3d 1198, 1202 n. 2 (10th Cir.2002), even though it is "superfluous [in this case] in light of the damages claim,” Green v. Branson, 108 F.3d 1296, 1300 (10th Cir.1997).

. In fact, in Snyder v. Murray City Corp., we reversed a district court’s decision to exercise supplemental jurisdiction over claims involving Utah’s Free Exercise and Establishment Clauses when the court had resolved the federal claims prior to trial. Snyder v. Murray City Corp., 124 F.3d 1349, 1354-55 (10th Cir.1997) (noting that the complex nature of the law interpreting Utah’s religion clauses supported dismissal of state claims), vacated in part on rehearing en banc, 159 F.3d 1227 (10th Cir.1998).

. These three factors are: “(1) the difference between the amount recovered and the damages sought; (2) the significance of the legal issue on which the plaintiff claims to have prevailed; and (3) the accomplishment of some public goal other than occupying the time and energy of counsel, court, and client.” Lippoldt, 468 F.3d at 1222 (quotations omitted).