483 F.3d 1044
 SUMMUM, a corporate sole and church, Plaintiff-Appellant,
v.
PLEASANT GROVE CITY, a municipal corporation; Jim Danklef, Mayor; Mark Atwood, City Council Member; Cindy Boyd, City Council Member; Mike Daniels, City Council Member; Darold McDade, City Council Member; Jeff Wilson, City Council Member; Carol Harmer, former City Council Member; G. Keith Corry, former City Council Member; Frank Mills, City Administrator, Defendants-Appellees.
 No. 06-4057.
 United States Court of Appeals, Tenth Circuit.
 April 17, 2007.
 
 Brian M. Barnard, Utah Legal Clinic, Salt Lake City, UT, appearing for Appellant.
 Francis J. Manion, American Center for Law & Justice, New Hope, KY (Edward L. White, III, Thomas More Law Center, Ann Arbor, MI, Jay Alan Sekulow, American Center for Law & Justice, Washington, DC, and Geoffrey R. Surtees, American Center for Law & Justice, New Hope, KY, with him on the brief), appearing for Appellees.
 Before TACHA, Chief Circuit Judge, EBEL, Circuit Judge, and KANE,* District Judge.
 TACHA, Chief Circuit Judge.
 
 
 1
 The Plaintiff-Appellant Summum, a religious organization, filed suit under 42 U.S.C. § 1983 for violation of its First Amendment rights against the Defendants-Appellees, the City of Pleasant Grove, its mayor, city administrator, and city council members. Summum appeals the District Court's denial of its request for a preliminary injunction. We exercise jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) and reverse the District Court's decision.
 
 BACKGROUND
 
 2
 A city park in Pleasant Grove, Utah, contains a number of buildings, artifacts, and permanent displays, many of which relate to or commemorate Pleasant Grove's pioneer history. For example, the park contains one of Pleasant Grove's first granaries, its first city hall, and its first fire department building. For purposes of this appeal, the most important structure is a Ten Commandments monument, donated by the Fraternal Order of Eagles in 1971, two years after it established a local chapter in Pleasant Grove.
 
 
 3
 In September 2003, Summum, a religious organization with headquarters in Salt Lake City, Utah, sent the mayor of Pleasant Grove a letter requesting permission to erect a monument containing the Seven Aphorisms of Summum in the city park. In its letter, Summum stated that its monument would be similar in size and nature to the Ten Commandments monument already present in the park. Approximately two months after Summum made its request, the mayor sent Summum written notification that the city had denied its request because the proposed monument did not meet the city's criteria for permanent displays in the park. According to the letter, all permanent displays in this particular park must "directly relate to the history of Pleasant Grove" or be "donated by groups with long-standing ties to the Pleasant Grove community."[1] The following year, in August 2004, the city passed a resolution codifying and expanding upon its alleged policy for evaluating requests for permanent displays in the park. The resolution contains a number of factors the city council must consider in deciding whether a proposed display meets a historical relevance requirement. In May 2005, Summum renewed its request, sending the mayor another letter with substantially the same language as the first letter.
 
 
 4
 When the city did not respond to its second request, Summum filed suit in federal district court seeking declaratory and injunctive relief, as well as monetary damages, for Pleasant Grove's violation of Summum's free speech rights under the U.S. Constitution and for the city's violation of the Utah Constitution's free expression and establishment provisions. Summum contends that the city violated its rights by excluding its monument while allowing other permanent monuments of an expressive nature (e.g., the Ten Commandments) to be displayed in the park.[2] In an oral ruling on various motions, the District Court denied Summum's request for a preliminary injunction requiring the city to permit the display of Summum's monument in the park. Summum subsequently appealed this decision, arguing that the District Court abused its discretion in denying the injunction based on Summum's First Amendment claim.[3]
 
 DISCUSSION
 I. Preliminary Injunction Standard
 
 5
 We review a district court's decision to deny a motion for a preliminary injunction for abuse of discretion, which we have characterized as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Schrier v. Univ. of Colorado, 427 F.3d 1253, 1258 (10th Cir. 2005) (quotations omitted). "A district court abuses its discretion when it commits an error of law or makes clearly erroneous factual findings." Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1252 (10th Cir. 2006). In reviewing the district court's decision, "[w]e examine the . . . court's underlying factual findings for clear error, and its legal determinations de novo." Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir.2002).
 
 
 6
 To prevail on a motion for a preliminary injunction in the district court, a moving party must establish that:
 
 
 7
 (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.
 
 
 8
 Schrier, 427 F.3d at 1258 (quotations omitted) (alterations in original). But because a preliminary injunction is an extraordinary remedy and is intended "merely to preserve the relative positions of the parties until a trial on the merits can be held," we have held that the moving party must meet a heightened standard when requesting one of three types of historically disfavored injunctions. Id. at 1258-59 (quotations omitted).
 
 
 9
 The three types of disfavored injunctions are "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir.2004) (en banc), aff'd and remanded, Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal, 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006). When a preliminary injunction falls into one of these categories, it "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." Id. A district court may not grant a preliminary injunction unless the moving party "make[s] a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." Id. at 976.
 
 
 10
 In this case, the preliminary injunction clearly falls within two categories of disfavored injunctions: it alters the status quo and is mandatory. An injunction alters the status quo when it changes the "last peaceable uncontested status existing between the parties before the dispute developed." Schrier, 427 F.3d at 1260 (quotations omitted). The last uncontested status between Summum and Pleasant Grove was one of no relationship between the two parties. Because Summum's monument is not currently displayed in a Pleasant Grove city park, an injunction ordering Pleasant Grove to permit the display of Summum's monument clearly changes the status quo. In addition, by requiring the city to make arrangements for the display of Summum's monument, an injunction would mandate that the city act and would require the district court to supervise the city's actions to ensure it abides by the injunction. Because an injunction would "affirmatively require" Pleasant Grove "to act in a particular way" and would require ongoing court supervision, it is a mandatory injunction. See id. at 1261 (quotations and alterations omitted). Because the injunction falls into two disfavored categories, Summum must have made "a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms" to prevail on its motion at the district court level. O Centro, 389 F.3d at 976.
 
 
 11
 Based on the record, we cannot discern whether the District Court applied this heightened standard. In its oral ruling, the court simply noted that it denied Summum's motion because it failed to establish a substantial likelihood of success on the merits. The court did not analyze the other three factors or explicitly state that it applied a heightened standard to Summum's request. But even if the District Court concluded that Summum could not prevail using the lesser standard, it certainly would reach the same conclusion under the heightened standard. Although the "failure of the district court to apply the correct standard" to a request for a preliminary injunction "amounts to an abuse of discretion," id. at 982 n. 5, any abuse in this case was in Summum's favor. We therefore assume that the District Court applied the heightened standard and review the court's legal conclusions and findings of fact for abuse of discretion.
 
 II. Preliminary Injunction Analysis
 
 12
 In its oral ruling on Summum's motion for a preliminary injunction, the District Court indicated that Summum would not prevail on the merits if Pleasant Grove proved it had a well-established policy for evaluating proposed monuments that was reasonable and viewpoint neutral. After finding that the facts regarding the city's policy (or lack thereof) were in dispute, the court concluded that Summum had not established a substantial likelihood of success on the merits. It therefore denied Summum's motion without addressing the other three factors required for issuance of a preliminary injunction.
 
 
 13
 As we explain below, the District Court abused its discretion by analyzing Summum's First Amendment claim under the incorrect legal standard. But rather than remanding to the District Court for the appropriate analysis, we find the record sufficiently developed to allow us to determine whether Summum has met its burden under the four factors necessary to prevail on its motion. See Schrier, 427 F.3d at 1261 (evaluating a request for an injunction on the merits when the district court applied the wrong legal standard); Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1075-76 (10th Cir.2001) (evaluating a request for an injunction on the merits when district court incorrectly applied legal test for restrictions on commercial speech).
 
 
 14
 
 A. Substantial Likelihood of Success on the Merits
 
 
 
 15
 1. Identifying the nature of the relevant forum
 
 
 16
 To determine the appropriate First Amendment standard under which to review the city's denial of Summum's request, the reviewing court must engage in a "forum analysis." The characterization of the forum at issue is crucial because "the extent to which the Government can control access depends on the nature of the relevant forum." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). In identifying the relevant forum, the court looks at both "(1) the government property to which access is sought and (2) the type of access sought." Summum v. City of Ogden, 297 F.3d 995, 1001 (10th Cir.2002). In this case, Summum seeks to display its monument among other monuments in Pleasant Grove's city park. The permanent monuments in the city park therefore make up the relevant forum. See id. at 1002 (identifying the relevant forum as "permanent monuments on the lawn of the . . . municipal building").
 
 
 17
 Having identified the relevant forum, the reviewing court must also determine whether the forum is public or nonpublic in nature. In general, the forum will fall into one of three categories:
 
 
 18
 (1) a traditional public forum (e.g., parks and streets), (2) a designated public forum (i.e., the government voluntarily transforms a nonpublic forum into a traditional public forum, thereby bestowing all the free speech rights associated with the traditional public forum, albeit on a potentially temporary basis, onto that now 'designated public forum'), or (3) a nonpublic forum (i.e., the government retains the right to curtail speech so long as those curtailments are viewpoint neutral and reasonable for the maintenance of the forum's particular official uses).
 
 
 19
 Id. In the case before us, the District Court indicated that the applicable analysis is whether Pleasant Grove's policy is reasonable and viewpoint neutral. The court therefore analyzed the city's actions using the standard associated with a nonpublic forum.
 
 
 20
 The city park is, however, a traditional public forum. Indeed, the Supreme Court has characterized streets and parks as "quintessential public forums," Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), because people have traditionally gathered in these places to exchange ideas and engage in public debate:
 
 
 21
 In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."
 
 
 22
 Id. (quoting Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)). Because the park is a public forum, the city's restrictions on speech are subject to strict scrutiny. Id.; see also Cornelius, 473 U.S. at 800, 105 S.Ct. 3439 ("Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest."); Int'l Soc'y for Krishna Consciousness, Inc. v. Lee (ISKCON), 505 U.S. 672, 678, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (indicating that such restrictions are subject to the "highest scrutiny").
 
 
 23
 Moreover, the city cannot close or otherwise limit a traditional public forum by fiat; a traditional public forum is defined by its objective characteristics, not by governmental intent or action. Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 678, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998); see also First Unitarian Church v. Salt Lake City Corp., 308 F.3d 1114, 1124 (10th Cir.2002) ("The government cannot simply declare the First Amendment status of [a traditional public forum] regardless of its nature and its public use."). In short, the nature of the forum in this case is public. See Eagon v. City of Elk City, 72 F.3d 1480, 1486-87 (10th Cir.1996) (rejecting argument that park is a nonpublic forum); see also United States v. Grace, 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) ("`[P]ublic places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be `public forums.'"); Frisby v. Schultz, 487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (noting that all public streets are traditional public forums regardless of their particular character).
 
 
 24
 Pleasant Grove contends that our decisions in City of Ogden and Summum v. Callaghan, 130 F.3d 906 (10th Cir.1997), support its argument that the monuments and other structures in the city park constitute a nonpublic forum. But in both City of Ogden and Callaghan, the property at issue could not be characterized — by tradition or government designation — as a public forum. City of Ogden, 297 F.3d at 1002 (holding that permanent monuments on the grounds of a municipal building were a nonpublic forum because property was "not by tradition or designation a forum for public communication" (quotations omitted)); Callaghan, 130 F.3d at 916-17 (holding that courthouse lawn was a nonpublic forum). Conversely, in the present case, the property is a park, the kind of property which has "immemorially been held in trust for the use of the public." Hague, 307 U.S. at 515, 59 S.Ct. 954. In this way, the present case more closely resembles the facts in Eagon. In Eagon, individuals sued Elk City for violation of their free speech rights after the city excluded their display from "Christmas in the Park," an annual event during which individuals and groups were allowed to erect displays in Ackley Park. 72 F.3d at 1483. In conducting our forum analysis, we characterized the relevant forum as "Ackley Park during the `Christmas in the Park' event" and held that the forum was a traditional public forum, in which "content-based restrictions on speech are valid only if necessary to serve a compelling state interest and if narrowly drawn to achieve that end." Id. at 1487. Similarly, the fact that Summum seeks access to a particular means of communication (i.e., the display of a monument) is relevant in defining the forum, but it does not determine the nature of that forum. See Cornelius, 473 U.S. at 802, 105 S.Ct. 3439 ("Having identified the forum . . . we must decide whether it is nonpublic or public in nature.").
 
 
 25
 By applying the standard associated with a nonpublic forum, the District Court committed an error of law. In a nonpublic forum, content-based restrictions on speech are permissible as long as they do not discriminate on the basis of the speaker's viewpoint and are reasonable. Perry Educ. Ass'n, 460 U.S. at 49, 103 S.Ct. 948; see also Cornelius, 473 U.S. at 806, 105 S.Ct. 3439 ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."). But in a public forum, content-based restrictions are presumptively invalid. R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); see also Police Dep't of Chicago v. Mosley, 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) ("Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone."). In order for a content-based restriction to survive strict scrutiny, the government must "show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Perry Educ. Ass'n, 460 U.S. at 45, 103 S.Ct. 948. As we explain below, Pleasant Grove has failed to justify its restriction on speech under this standard.[4]
 
 
 26
 2. Application of strict scrutiny to content-based restrictions in a traditional public forum
 
 
 27
 Pleasant Grove concedes that its restriction on speech in the park is content based.[5] By requiring that monuments meet the city's historical relevance criteria, the city excludes monuments on the basis of subject matter and the speaker's identity.[6] Because the city's restrictions are content based, they may not be analyzed under the less exacting intermediate scrutiny applied to content-neutral restrictions regulating the time, place, or manner of expression in public forums. Id.
 
 
 28
 We must therefore determine whether Pleasant Grove has demonstrated that application of its historical relevance criteria will, "more likely than not, be justified by the asserted compelling interests." Gonzales, 126 S.Ct. at 1219; see also Ashcroft v. Am. Civil Liberties Union, 542 U.S. 656, 665, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004) ("When plaintiffs challenge a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute."); Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1231 (10th Cir.2005) ("A municipality has the burden of justifying its regulation [of speech] even on a motion to enjoin enforcement of an ordinance."). Even though the injunction in this case is disfavored and Summum's request is therefore analyzed under a heightened standard, in the context of a First Amendment challenge, Pleasant Grove bears the burden of establishing that its content-based restriction on speech will "more likely than not" survive strict scrutiny. See Ashcroft, 542 U.S. at 666, 124 S.Ct. 2783 ("As the Government bears the burden of proof on the ultimate question of [the restriction's] constitutionality, [the moving party] must be deemed likely to prevail unless the Government has shown that [the moving party's] proposed less restrictive alternatives are less effective than [the restriction]."); Leavitt, 256 F.3d at 1072-73 (placing the burden on the government to justify its speech restrictions in a preliminary injunction hearing).
 
 
 29
 Because Pleasant Grove argued below that the relevant forum is nonpublic in nature, it did not assert a compelling interest that would justify excluding Summum's monument. The only interest Pleasant Grove asserted is an interest in promoting its history. The city's failure to offer any reason why this interest is compelling is sufficient for Summum to meet its burden in demonstrating a substantial likelihood of success on the merits. See Pac. Frontier, 414 F.3d at 1235 (affirming district court's conclusion that city failed to meet its burden in justifying its regulation at preliminary injunction stage); see also S.O.C., Inc. v. County of Clark, 152 F.3d 1136, 1146 (9th Cir.1998) (finding that plaintiff had established substantial likelihood of success on the merits when county did not offer any reason why its interests were compelling).[7]
 
 
 30
 But even if we assume that Pleasant Grove's stated interest is compelling, the city has also failed to establish that the content-based exclusion of Summum's monument is "necessary, and narrowly drawn," to serve the city's interest in promoting its history. See Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 761, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). As the Supreme Court has explained, defining a governmental interest this narrowly (i.e., the promotion of the city's history in this particular park) turns the effect of the regulation into the governmental interest. See Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 120, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (explaining that "this sort of circular defense can sidestep judicial review of almost any statute, because it makes all statutes look narrowly tailored").
 
 
 31
 Furthermore, the city may not use content-based restrictions to advance a particular ideology. See Wooley v. Maynard, 430 U.S. 705, 717, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (holding that state's interest in promoting "appreciation of history, state pride, and individualism" was not ideologically neutral and therefore not compelling enough to outweigh an individual's free speech rights). The city may further its interest in promoting its own history by a number of means, but not by restricting access to a public forum traditionally committed to public debate and the free exchange of ideas. ISKCON, 505 U.S. at 700, 112 S.Ct. 2701 (Kennedy, J., concurring in judgment) (stating that government may not "assert broad control over speech or expressive activities" in a public forum, but "must alter the objective physical character or uses of the property, and bear the attendant costs, to change the property's forum status").
 
 
 32
 In addition to the city's stated interest in promoting its history, the 2004 city resolution governing monuments in the park contains aesthetic and safety justifications for the speech restriction.[8] Cities have substantial interests in the aesthetic appearance of their property. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). To further these interests, Pleasant Grove may pass a reasonable content-neutral resolution regulating the time, manner, or place of speech in the park. For example, it could ban all permanent displays of an expressive nature by private individuals. Pinette, 515 U.S. at 761, 115 S.Ct. 2440 (noting a "ban on all unattended displays" as a possible content-neutral restriction in a traditional public forum); see also Ward v. Rock Against Racism, 491 U.S. 781, 792, 796, 109 S.Ct. 2746, 105 L.Ed.2d 661 (holding that city's regulation of sound levels in park was a content-neutral and narrowly tailored means of serving city's interest in the peaceful character of park and privacy of residential area).
 
 
 33
 Here, however, the city has furthered its objectives by passing a content-based resolution, which excludes all speech that does not meet its historical relevance criteria; the resolution is therefore subject to strict scrutiny. We need not decide whether the city's interests in aesthetics and safety are compelling because the resolution is not narrowly tailored to achieve its stated interests. The city has not offered any reason why monuments with its preferred historical content will preserve park space and reduce safety hazards more effectively than monuments containing other content. See Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1267 (11th Cir.2005) (holding city's sign code unconstitutional because not narrowly tailored to serve "the general purposes of aesthetics and traffic safety"); see also City of Ladue v. Gilleo, 512 U.S. 43, 52, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (noting that, by allowing content-based exemptions, the government "may diminish the credibility of [its] rationale for restricting speech in the first place"). Rather, the distinction between monuments with particular historical content and monuments lacking this content "bears no relationship whatsoever" to the resolution's stated interests in aesthetics and safety. City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 424, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (finding that ban on commercial newsracks lacked reasonable fit with city's interests in aesthetics and safety); see also Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 792, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (holding state's "generalized interest" was "insufficiently related" to its chosen means). The city may not burden speech that does not present the danger the regulation seeks to address: "Where at all possible, government must curtail speech only to the degree necessary to meet the particular problem at hand, and must avoid infringing on speech that does not pose the danger that has prompted regulation." Fed. Election Comm'n v. Mass. Citizens for Life, Inc., 479 U.S. 238, 265, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). Summum's monument is similar in size, material, and appearance to the Ten Commandments monument already displayed in the park. The city's exclusion of the monument based on its content cannot be justified by an interest in aesthetics or safety.[9]
 
 
 34
 Because Pleasant Grove has not demonstrated that application of its historical relevance criteria is more likely than not to be justified by its stated interests, we conclude that Summum has established a substantial likelihood of success on the merits and proceed to a determination of whether Summum has satisfied its burden under the remaining three factors necessary for a preliminary injunction.
 
 
 B. Irreparable Injury
 
 
 35
 The second factor we must consider in determining whether Summum is entitled to a preliminary injunction is whether Summum will suffer irreparable harm if denied an injunction. Deprivations of speech rights presumptively constitute irreparable harm for purposes of a preliminary injunction: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), quoted in Pac. Frontier, 414 F.3d at 1235, and Heideman v. South Salt Lake City, 348 F.3d 1182, 1190 (10th Cir. 2003). For this reason, we have assumed irreparable injury when plaintiffs are deprived of their commercial speech rights, e.g., Pac. Frontier, 414 F.3d at 1235; Utah Licensed Beverage Ass'n, 256 F.3d at 1076, even though restrictions on commercial speech are subject to intermediate scrutiny, not strict scrutiny as in the case before us, see Utah Licensed Beverage Ass'n, 256 F.3d at 1066. If we can assume irreparable harm in the context of commercial speech, we can surely assume irreparable harm when the government deprives an individual of speech in a traditional public forum subject to the highest scrutiny. See Heideman, 348 F.3d at 1190 (noting that determination of irreparable harm requires consideration of "the specific character of the First Amendment claim"). Given the character of the deprivation in this case (i.e., exclusion from a traditional public forum), we hold that Summum has established it will suffer irreparable harm if the injunction is denied.
 
 
 C. Balance of Harms
 
 
 36
 Next, we consider whether the First Amendment injury to Summum outweighs any prospective injury to Pleasant Grove in the event the injunction is granted. Pleasant Grove argues that it will suffer substantial harm because, if Summum is allowed to display its monument, the city will be inundated with requests from other individuals and the park will be flooded with monuments. But the city's potential harm must be weighed against Summum's actual First Amendment injury. O Centro, 389 F.3d at 1009 (Seymour, J., concurring in part and dissenting in part) ("Thus, the balance is between actual irreparable harm to plaintiff and potential harm to the government which does not even rise to the level of a preponderance of the evidence."); see also ISKCON, 505 U.S. at 701, 112 S.Ct. 2701 (Kennedy, J., concurring in judgment) ("The First Amendment is often inconvenient. . . . Inconvenience does not [however] absolve the government of its obligation to tolerate speech."). The record contains no evidence to support Pleasant Grove's contention that an injunction in this case will prompt an endless number of applications for permanent displays in the park. The city's speculative harm cannot outweigh a First Amendment injury, especially because Summum has established a substantial likelihood of success on the merits. See O Centro, 389 F.3d at 1010 (Seymour, J., concurring in part and dissenting in part); Pac. Frontier, 414 F.3d at 1236-37; see also Wyandotte Nation, 443 F.3d at 1256 (holding that plaintiff made strong showing regarding the balance of harms under the heightened standard for a mandatory injunction in part because plaintiff had substantial likelihood of success on the merits). We therefore hold that Summum has made a strong showing with regard to the balance of harms.
 
 
 D. Public Interest
 
 
 37
 Lastly, we consider whether granting the injunction would be contrary to the public interest. We have held that preliminary injunctions which further plaintiffs' free speech rights are not adverse to the public interest. Pac. Frontier, 414 F.3d at 1237 ("Vindicating First Amendment freedoms is clearly in the public interest."); Utah Licensed Beverage Ass'n, 256 F.3d at 1076 ("Because we have held that Utah's challenged statutes . . . unconstitutionally limit free speech, we conclude that enjoining their enforcement is an appropriate remedy not adverse to the public interest."); Am. Civil Liberties Union v. Johnson, 194 F.3d 1149, 1163 (10th Cir.1999) (holding that a preliminary injunction was not contrary to the public interest because "it will protect the free expression of the millions of Internet users both within and outside of the State of New Mexico" (quotations omitted)); Elam Const., Inc. v. Reg'l Transp. Dist., 129 F.3d 1343, 1347 (10th Cir.1997) ("The public interest also favors plaintiffs' assertion of their First Amendment rights."). Because an injunction requiring the city to permit the display of Summum's monument will further free speech rights, the injunction is clearly in the public interest.
 
 CONCLUSION
 
 38
 We hold that Summum has met its burden under all four factors necessary for a preliminary injunction and has made the strong showing required under the heightened standard for disfavored injunctions. We therefore REVERSE the District Court's order denying Summum's motion and REMAND with instructions to grant the preliminary injunction in Summum's favor. In addition, the District Court may conduct further proceedings consistent with this opinion. We DENY as moot Summum's motion to expedite this appeal.
 
 
 
 Notes:
 
 
 *
 Honorable John L. Kane, Jr., Senior District Judge for the District of Colorado, sitting by designation
 
 
 [1]
 Although Summum claims it did not receive this letter, the organization's president acknowledged that he had read the notice of the city's denial in the newspaper. (Applt. App. at 59)
 
 
 [2]
 The Ten Commandments monument clearly constitutes protected speechSummum v. Callaghan, 130 F.3d 906, 913-14 (10th Cir. 1997) ("[P]rivate religious speech . . . is as fully protected under the Free Speech Clause as secular private expression." (quotations omitted)). In addition, we have previously characterized a Ten Commandments monument donated by the Fraternal Order of Eagles and placed by the city on public property as the private speech of the Eagles rather than that of the city. See Summum v. City of Ogden, 297 F.3d 995, 1006 (10th Cir.2002); Callaghan, 130 F.3d at 913. Pleasant Grove argues that the Supreme Court's recent decision in Van Orden v. Perry, 545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005), requires this Court to treat the Ten Commandments monument as governmental speech. In Van Orden, the Supreme Court held that the Establishment Clause was not violated by the display of a similar Ten Commandments monument on the Texas State Capitol grounds. Pleasant Grove contends that the Supreme Court would not have applied an Establishment Clause analysis in Van Orden unless the Court considered the Ten Commandments monument to be governmental speech. But this argument is without merit because the Establishment Clause prohibits governmental endorsement of religion, which can occur in the absence of direct governmental speech. Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 774, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (O'Connor, J., concurring in part and concurring in judgment).
 
 
 [3]
 Summum does not argue on appeal that it is entitled to a preliminary injunction based on its claims under the Utah Constitution and has therefore waived this issueState Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n. 7 (10th Cir.1994).
 
 
 [4]
 We note that the Supreme Court has chosen not to apply forum principles in certain contexts, recognizing that the government in particular roles has discretion to make content-based judgments in selecting what private speech to make available to the publicSee United States v. Am. Library Ass'n, Inc., 539 U.S. 194, 205, 123 S.Ct. 2297, 156 L.Ed.2d 221 (2003) (plurality opinion) (recognizing that public library staffs have broad discretion to consider content in making collection decisions); Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 673, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998) ("Public and private broadcasters alike are not only permitted, but indeed required, to exercise substantial editorial discretion in the selection and presentation of their programming."); Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 585, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (holding that the NEA may make content-based judgments in awarding grants as such judgments "are a consequence of the nature of arts funding"). The city in the case before us is not, however, acting in its capacity as librarian, television broadcaster, or arts patron. Because the Supreme Court has not extended the reasoning of these cases to the context we consider today, we conclude that the case is best resolved through the application of established forum principles.
 
 
 [5]
 In its brief, Pleasant Grove acknowledged that it evaluates proposed monuments based on their content: "[T]he City merely restricts permanent monuments based on either the content of the monument (i.e., the historical relevance to the City) or the identity of the donor (i.e., one with ties to the community). Such criteria, while certainly content-based, are reasonable and completely neutral with regard to viewpoint. . . ." App. Br. at 23
 
 
 [6]
 In addition to exclusions based on viewpoint or subject matter, exclusions based on the speaker's identity trigger strict scrutiny when the forum at issue is publicSee Cornelius, 473 U.S. at 808, 105 S.Ct. 3439 (noting that exclusion of speech from a public forum requires "a finding of strict incompatibility between the nature of the speech or the identity of the speaker" and the forum's function); see also Mosley, 408 U.S. at 96, 92 S.Ct. 2286 ("[W]e have frequently condemned . . . discrimination among different users of the same medium for expression."); Eagon, 72 F.3d at 1487 (subjecting to strict scrutiny the city's denial to partisan groups of the same opportunity to speak as non-partisan groups in a traditional public forum).
 
 
 [7]
 Pleasant Grove's reliance on our decision inCity of Ogden is misplaced. The city argues that our decision supports its use of historical relevance criteria to limit speech in this context. In City of Ogden, however, we simply noted that we were not deciding that a city "may never maintain a nonpublic forum to which access is controlled based upon 'historical relevance' to the given community." 297 F.3d at 1006 (emphasis added). In other words, we left open the question whether a city could limit access to a nonpublic forum based on historical relevance. More important, we did not express any opinion about the use of historical relevance criteria to justify content-based discrimination in a public forum. A content-based restriction permissible in a nonpublic forum will not necessarily survive the strict scrutiny applied to a restriction in a public forum.
 
 
 [8]
 The resolution contains the following preamble:
 WHEREAS, there is a limited amount of park space within the city; and
 WHEREAS, there are aesthetic issues surrounding the placement of permanent objects in parks and other public areas; and
 WHEREAS, the City wishes to preserve its public open space; and
 WHEREAS, permanent structures, displays, permanent signs and monuments, decrease the available open space and the visual perception of open space, and
 WHEREAS, there are also safety issues surrounding the placement of permanent objects in parks and public areas such as sight obstructions, and line of sight availability; and
 WHEREAS, the City wishes to insure the placement of permanent objects on public property does not create safety hazards. (Applt. App. at 55)
 
 
 [9]
 Because Pleasant Grove's restriction on monuments in the park is not necessary or narrowly drawn to serve a compelling interest, we need not decide whether the city's 2004 resolution purportedly codifying its unwritten policy is a post hoc facade for content-based discriminationSee City of Ogden, 297 F.3d at 1006-09 (analyzing whether city's historical relevance justification was well-established policy or a post hoc facade for viewpoint discrimination); Cornelius, 473 U.S. at 812-13, 105 S.Ct. 3439 (remanding for factual inquiry into whether government's stated reasons for restricting speech were motivated by a desire to suppress certain viewpoints). We do note, however, that the record contains little support for a well-established policy or practice of approving monuments that promote the city's pioneer history. In the "absence of express standards," such as a written policy, city officials are more likely to use post hoc rationalizations to justify their decisions; this kind of "unbridled discretion" can result in content or viewpoint discrimination. Callaghan, 130 F.3d at 920 (quotations omitted).