**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

August 1, 2008

**Elisabeth A. Shumaker**
**Clerk of Court**

JONATHAN J. EDMISTEN,

    Plaintiff-Appellant,

v.

ROGER WERHOLTZ, Secretary,
Kansas Department of Corrections,
in his official and private capacity;
DAVID R. McKUNE, Warden,
Lansing Correctional Facility, in his
official and private capacity; RAY
ROBERTS, Warden, El Dorado
Correctional Facility, in his official
and private capacity; JOSIE NORRIS,
Corporate Medical Director, Correct
Care Solutions, and Director of
Medical Services, Kansas Department
of Corrections, in her official and
private capacity; DALE A. DAVIS,
D.D.S. - Doctor of Dental Science,
Director of Dental Care Services,
Correct Care Solutions, and Dental
Director, Kansas Department of
Corrections, in his official and private
capacity; FNU CANNON, Dentist,
Correct Care Solutions, El Dorado
Correctional Facility, in his official
and private capacity; E. EDELMAN,
Corporate Medical Director, Correct
Care Solutions, and Director of
Medical Services, Kansas Department
of Corrections, in his official and
private capacity; FNU JONES,
Physician, Correct Care Solutions,
Kansas Department of Corrections,
in his official and private capacity;

No. 08-3021
(D.C. No. 5:07-CV-03116-JWL-KGS)
(D. Kan.)

KIM PALMER, Health Care Administrator, Correct Care Solutions, Kansas Department of Corrections, in her official and private capacity; ROBERT J. MARTIN, Medical Physician, Correct Care Solutions, Lansing Correctional Facility, in his official and private capacity; FNU HAUN, Medical Physician, Correct Care Solutions, Lansing Correctional Facility, in his official and private capacity; JOHN/JANE DOES, Lansing and El Dorado Correctional Facilities; KANSAS DEPARTMENT OF CORRECTIONS,

Defendants-Appellees.

## ORDER AND JUDGMENT[*]

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

Plaintiff Jonathan J. Edmisten appeals pro se from the district court's order denying two motions for a temporary restraining order (TRO) and preliminary

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

injunction (PI). Our jurisdiction over this interlocutory appeal arises under 28 U.S.C. § 1292(a)(1), and we reverse and remand.

## I. Background

According to the allegations in the verified complaint, Mr. Edmisten has a history of bone cancer. In 1999, he had bilateral temporomandibular prostheses surgically implanted in his jaw. Apparently, those prostheses were fashioned from Mr. Edmisten's ribs. In May 2006 he was placed in the custody of the Kansas Department of Corrections (KDOC) to serve a sentence of thirty-nine months. On May 18, 2006, he was admitted to the El Dorado Correctional Facility (EDCF). A week later, his jaw locked while he was eating. An x-ray taken by a prison dentist, Dr. Fred Cannon, showed a dislocated or fractured right prosthesis, and Mr. Edmisten soon was sent to see Dr. Cole, an oral surgeon in Wichita. Dr. Cole told Mr. Edmisten that immediate surgery to replace the prosthesis was necessary, but due to the complexity of the procedure, it should be performed by the foremost authority on the subject, Dr. John Kent, a New Orleans oral surgeon who originally had implanted the prostheses. In the meantime, Dr. Cole prescribed pain medication, antibiotics, and a special diet.

Mr. Edmisten alleged that upon his return to the EDCF, and for a period of time that he was housed at the Lansing Correctional Facility, he was for the most part denied pain medications, antibiotics, and a special diet, and as a result suffered great pain, serious infection, and substantial detriment to his overall

-3-

health.  Over the course of several months, Dr. Cole tried several times to relocate the prosthesis without success, allegedly at the urging of the KDOC.  A number of other oral surgeons refused to work on the problem due to its complexity, opining that Dr. Kent was the surgeon for the job.  Finally, on October 23, 2006, Mr. Edmisten was sent to New Orleans to see Dr. Kent.  Dr. Kent told him that because the infection had gone untreated and had spread, the only thing that could be done was to remove the broken prosthesis, clean out the infected area, and wait for it to heal before implanting a new synthetic prosthesis; using more ribs was out of the question.  Without the new prosthesis, Dr. Kent said, Mr. Edmisten would be left without a functional jaw, would be unable to eat solid food, would lose the ability to speak clearly, and would suffer pain that would increase over time.  Dr. Kent accordingly removed the broken prosthesis and treated the infection.  He released Mr. Edmisten a few days later with instructions to return in ten days for a follow-up visit and recommendation for future treatment. Dr. Kent prescribed pain medications, antibiotics, and a special diet.

Mr. Edmisten alleged that, upon his return to prison, his pain medications were discontinued after only one day, and that he was told that Dr. Adam Edelman, the new director of medical services for Correct Care Solutions (CCS), which contracts with the KDOC to provide medical services to inmates, had personally ordered the discontinuation.  Dr. Cannon, the EDCF dentist, told Mr. Edmisten that since Dr. Edelman had taken over at CCS, the company would

not pay the cost for the new prosthesis, which Mr. Edmisten estimates at $100,000. Dr. Cannon was of the opinion that Mr. Edmisten was being denied proper treatment. Mr. Edmisten further alleged that he was hospitalized in the infirmary many times during November and December 2006 due to repeated cycles of antibiotics and infection, and he was not given a medically proper diet. He filed grievances that went unheard, and then he filed this action.

In his complaint, Mr. Edmisten asserted claims under 42 U.S.C. § 1983 and Kansas state law against KDOC as well as various KDOC and CCS officials and employees. His primary claim, which forms the basis of his request for injunctive relief, is that he was deliberately denied prescribed medical treatment (replacement of the prosthesis) and care (pain medication, antibiotics, medically appropriate diet) in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. He asked for declaratory relief, injunctive relief, damages, and attorney fees.

In his motions for a TRO and PI, Mr. Edmisten argued that he was denied the new prosthesis because of an informal policy to give low priority to the medical needs of inmates requiring specialized, expensive care or treatment unless the condition is life-threatening. Addressing the burden he must meet in order to obtain preliminary injunctive relief, which we detail below, he claimed irreparable harm in the form of the pain and suffering he had endured and continues to endure and an increasing risk that his jaw will be rendered useless if

the new prosthesis is not installed soon.  He also asserted that the denial of his constitutional rights constitutes irreparable harm as a matter of law.  As to the balance of hardships, he argued that his interest in avoiding pain and getting treatment necessary to preserve the use of his jaw outweighs defendants' interest in saving money on care they are required to provide.  He argued that he was likely to prevail on the merits of his Eighth Amendment claim because defendants had intentionally interfered with prescribed medical treatment.  And he asserted that an injunction would advance the public's interest in protecting his constitutional rights and having prison officials obey the law.  He requested an order directing defendants to arrange for an examination and a plan of treatment by a qualified specialist, and to carry out that treatment plan.

The district court reviewed the complaint as part of its screening function under 28 U.S.C. § 1915A, and found that "a response to the complaint is required, and that proper and judicial processing of the claims cannot be achieved without additional information from appropriate officials of the [KDOC]."  R., Vol. I, Doc. 15, at 1.  Despite this finding, the court denied the TRO/PI motions, reasoning that Mr. Edmisten had not shown "that medical attention to [his] needs is currently being denied, or that 'the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'"  *Id.* at 3 (quoting *Heideman v. So. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)).  The court further found that Mr. Edmisten had not "sustained

his burden of demonstrating the extraordinary relief being requested would not substantially burden the efficient management of prison resources, and not be adverse to the public interest." R., Vol. I, Doc. 15, at 3. The court granted him *in forma pauperis* status, denied his request for counsel, directed service on defendants, and ordered KDOC officials to prepare a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (per curiam). Mr. Edmisten then took this interlocutory appeal. Meanwhile, the case continues in the district court.

## II.    Standard of Review

The "denial of a motion for a preliminary injunction is reviewed for an abuse of discretion, legal error, or clearly erroneous factual findings." *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).[1] "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (citation omitted). "We examine the district court's underlying factual findings for clear error, and its legal determinations *de novo*." *Id.* As a pro se litigant, Mr. Edmisten's pleadings and other papers are construed liberally. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

---

[1]    Ordinarily, the denial of a TRO is not immediately appealable, but an exception applies when the movant will suffer irreparable harm. *Duvall v. Keating*, 162 F.3d 1058, 1062 (10th Cir. 1998). The standard of review is the same for the denial of a TRO as it is for a PI. *Id.*

In order to receive a preliminary injunction, a movant must establish the following:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

*Kikumura*, 242 F.3d at 955.

"[A] preliminary injunction is an extraordinary remedy, [and therefore] the right to relief must be clear and unequivocal." *Id.* (quotation omitted). In this case, because Mr. Edmisten seeks a disfavored injunction (i.e., one that is mandatory as opposed to prohibitory, would alter the status quo, or would provide him with substantially all the injunctive relief he seeks), he faces a "heightened burden" of showing that "the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (per curiam) (majority opinion). Thus, he is "not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard," but "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* at 976.

## III. Analysis

Having reviewed the allegations and arguments set forth in the complaint, the TRO/PI motions, and Mr. Edmisten's affidavits, we conclude that the district

court erred in denying the motions. The district court was required to take the allegations as true until they were denied, *Smotherman v. United States*, 186 F.2d 676, 678 (10th Cir. 1950), particularly because they were not facially unlikely or absurd, *cf. Vega v. Wiley*, 259 F. App'x 104, 106-07 (10th Cir. 2007) (unpublished) (concluding that uncorroborated allegations in verified complaint and affidavits accompanying motions, plus scant additional evidence, were insufficient evidentiary support for prisoner's request for preliminary injunctive relief where allegations were facially unlikely, and conceivably possible claims were juxtaposed with absurd claims).[2] As explained below, the allegations on their face meet the requirements for a disfavored preliminary injunction. Therefore, the district court should have ordered defendants either to show cause why the injunction should not be granted or to prepare a *Martinez* report. Thereafter, the court should have conducted an evidentiary hearing, if appropriate or necessary, to resolve any disputed allegations related to the request for preliminary injunctive relief.

## A. Substantial Likelihood of Success on the Merits

A state has a constitutional "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). That duty requires a state to provide "a level of medical care which is

---

[2]  We cite this unpublished case not as precedent but for its persuasive value. *See* 10th Cir. R. 32.1(A).

reasonably designed to meet the routine and emergency health care needs of inmates," including dental needs. *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980) (quotation omitted). A violation of the Eighth Amendment's prohibition on cruel and unusual punishments occurs when there is deliberate indifference to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104.

The test for whether a defendant has shown deliberate indifference to an inmate's health or safety has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires a showing that the deprivation at issue is "sufficiently serious." *Id.* (quotation omitted). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quotation omitted). Deliberate indifference also may be "shown when prison officials have prevented an inmate from receiving recommended treatment." *Ramos*, 639 F.2d at 575. "[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (quotations and citation omitted).

The subjective component of the deliberate indifference test requires a showing that the defendants were both "aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists" and that the defendants drew that inference. *Id.* (quotation omitted). For example, "[a] prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if [that person] delays or refuses to fulfill that gatekeeper role." *Id.* (quotation and ellipsis omitted). Further, "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the prisoner's] condition." *Id.* at 755.

Taking Mr. Edmisten's allegations as true, the district court's finding that he had not established "that medical attention to [his] needs is currently being denied," R., Vol. I, Doc. 15, at 3, is clearly erroneous.[3] While Mr. Edmisten's allegations indicate that he was receiving *some* medical attention, the central thrust of his complaint is twofold: (1) he was not given certain *prescribed* or *recommended* medical care (pain medication, antibiotics, and diet), thereby suffering significant and unnecessary pain, and (2) certain defendants refused to transport him back to New Orleans in accordance with Dr. Kent's order for a follow-up visit to determine whether the procedure both Dr. Cole and Dr. Kent viewed as necessary could be completed, a delay that has led to an unnecessary

---

[3] Although not labeled as such, this finding goes to the merits of the Eighth Amendment claim because "intentionally interfering with the treatment once prescribed" can constitute deliberate indifference. *Estelle*, 429 U.S. at 105.

-11-

and significant deterioration in functioning that may result in permanent loss of use or lifelong handicap. Thus, defendants' intentional interference with prescribed or recommended treatment, delay in providing medical care, and failure to fulfill a gatekeeper role, if proven, satisfy the test for deliberate indifference under the Eighth Amendment. *See Estelle*, 429 U.S. at 105; *Mata*, 427 F.3d at 751; *Ramos*, 639 F.2d at 575; *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983."). Therefore, Mr. Edmisten has made a strong showing that he is likely to succeed on the merits of his Eighth Amendment claim.

**B. Irreparable Harm**

The district court's finding that Mr. Edmisten failed to show "that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm," R., Vol. I, Doc. 15, at 3 (quotation omitted), is clearly erroneous. "'When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'" *Kikumura*, 242 F.3d at 963 (quoting 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)). Although *Kikumura* involved the deprivation of First Amendment rights, this rule has been applied in the Eighth Amendment context in at least one other circuit. *See Jolly v.*

*Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996), *abrogated on other grounds by City of Boerne v. Flores*, 521 U.S. 507 (1997).  However, we need not consider whether to apply this rule in the Eighth Amendment context, as Mr. Edmisten suggests, because he can make a strong showing of irreparable injury under any of the formulations we have used to describe it:  the injury is "both certain and great," not "merely serious or substantial"; of the sort that "cannot be adequately atoned for in money"; or one that "the district court cannot remedy following a final determination on the merits."  *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quotations and alterations omitted).

Mr. Edmisten's allegations, taken as true, meet each of these tests.  Since the removal of the prosthesis and the defendants' ensuing failure to follow Dr. Kent's order for a follow-up visit, Mr. Edmisten has lost all movement and function in his jaw; can only eat solid food by swallowing it whole, which he later vomits; cannot speak clearly; is more disfigured; and suffers chronic pain.  He also contends that if he does not have the new prosthesis installed soon, there is an increasing risk that the procedure could not be performed at a later date.  The individual KDOC appellees respond that this latter contention is simply an unsupported allegation, but this argument overlooks several of the allegations in the complaint, including that Dr. Cole and Dr. Kent both viewed replacement as necessary; that Dr. Kent planned a follow-up visit with Mr. Edmisten ten days after the first procedure, to which he was never transported; and that

Mr. Edmisten has lost all range of motion in his jaw and the ability to speak clearly. Thus, whether or not it is speculative that continued delay would foreclose Mr. Edmisten's opportunity to get the replacement prosthesis is beside the point—the procedure was prescribed, and defendants allegedly interfered with completion of the procedure. The lack of a functional jaw, and the concomitant eating problems, would have a certain and great effect on Mr. Edmisten's physical condition, an effect that could not be atoned for in money damages or adequately remedied by the district court given the passage of time that ordinarily accompanies a trial on the merits. Therefore, taking the allegations as true, Mr. Edmisten has made a strong showing that he will sustain irreparable harm—his condition, both of his jaw and his overall health, will deteriorate irreparably absent implantation of the new prosthesis.

## C. Balance of Harms

As to the balance of harms, the district court found only that Mr. Edmisten had not "sustained his burden of demonstrating the extraordinary relief being requested would not substantially burden the efficient management of prison resources." R., Vol. I, Doc. 15, at 3. This finding misses the mark for two reasons. First, while the projected $100,000 cost would no doubt be a substantial burden on the efficient use of the responsible party's resources, such a burden would not be misplaced or undue if in fact one or more of the defendants is legally obligated to provide the treatment. Second, since the district court did not

-14-

find any irreparable harm, it did not balance the irreparable harm to Mr. Edmisten as a result of the failure to replace the prosthesis against the financial burden on the responsible parties. Assuming that one or more of the defendants is obligated to provide for the replacement of the prosthesis, Mr. Edmisten has made a strong showing that the irreparable physical harm to his health outweighs the costs to the responsible defendant(s).[4]

### D. Public Interest

The district court summarily found that Mr. Edmisten had not "sustained his burden of demonstrating the extraordinary relief being requested would not . . . be adverse to the public interest." *Id.* As an initial matter, the court's "failure to engage in a more explicit analysis is an abuse of discretion." *Aid for Women v. Foulston*, 441 F.3d 1101, 1121 (10th Cir. 2006). Given that Mr. Edmisten has met his burden as to the other three prongs of the PI test, this error alone is sufficient for remand as to the public interest prong. But even overlooking this deficiency, Mr. Edmisten's argument that the public has an interest in protecting the civil rights of all persons under the Constitution has merit. *See Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056-57 (10th Cir. 2007) (holding that an injunction protecting First Amendment rights is not adverse to public interest), *cert. granted*, 128 S. Ct. 1737 (2008). Taking

---

[4] Whether any of the defendants is responsible for the cost of the replacement is an issue the district court will have to address on remand.

-15-

Mr. Edmisten's allegations as true, the defendants have a constitutional obligation to provide the required dental care, and compelling defendants to perform that duty is not contrary to the public interest.

## IV.    Conclusion

The district court's fundamental error in denying Mr. Edmisten's TRO/PI motions was in failing to first obtain a response from the defendants to the allegations in the verified complaint and thereafter resolving any factual disputes related to the request for preliminary injunctive relief.  Therefore, we must REVERSE the order of the district court denying those motions and REMAND the matter for the court to reconsider the motions, as further supplemented or amended in any manner the district court deems appropriate, and taking into consideration the current procedural posture of the case.  Mr. Edmisten's motion to proceed on appeal without prepayment of costs or fees is granted, and we remind him to continue making partial payments until the filing fee is paid in full.

Entered for the Court


Wade Brorby
Senior Circuit Judge